## THE COAMO. THE W. F. DALZELL. THE AGNES MORAN.

(Circuit Court of Appeals, Second Circuit. April 14, 1920.)

Nos. 196, 197.

1. **Collision ⊂⇒106—Special circumstance rule held applicable.**
   Where a tug, with barge in tow, was coming up the river, while a steamship was turning around, so as to swing into a slip broadside, the situation was clearly one of special circumstance within article 27 of the Inland Regulations (Comp. St. § 7901), which required each vessel to navigate with prudence, so as to avoid immediate danger.

2. **Collision ⊂⇒95(7)—Steamship navigator and tug with barge, which collided, held at fault.**
   On cross-libels for damages caused by collision between a barge in tow of a tug and a steamship being turned around in the channel, the steamship and the master of a tug assisting her, who was in charge of her navigation, *held* at fault for insufficient lookout, and the tug having the barge in tow *held* also at fault for insufficient lookout and failure to sound timely warning.

Appeals from the District Court of the United States for the Southern District of New York.

Separate libels by the Central Union Stockyards Company against the steamship Coamo, claimed by the New York & Porto Rico Steamship Company, in which Fred. B. Dalzell & Co., Incorporated, and the tug W. F. Dalzell were impleaded, and by the New York & Porto Rico Steamship Company against Fred B. Dalzell & Co., Incorporated, and others. From decrees holding the tugs W. F. Dalzell and Henry S. Beard (now known as the Agnes Moran) at fault, and liable for the damages, the claimant of the tug Fred. B. Dalzell appeals. Reversed, with directions.

Kirlin, Woolsey & Hickox, of New York City (Robert S. Erskine, of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (T. Catesby Jones and Leonard J. Matteson, both of New York City, of counsel), for appellee Central Union Stockyards Co.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Charles E. Wythe, both of New York City, of counsel), for appellee New York & Porto Rico S. S. Co.

Park & Mattison, of New York City (Samuel Park, of New York City, of counsel), for appellee Moran Towing & Transportation Co.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. April 4, 1916, about 7 a. m., in perfectly clear weather, the tide strong flood, about midstream in the East River between the Brooklyn Navy Yard and Corlears Hook Park, where there is a width of water of from 1,600 to 1,800 feet, and where there was no other shipping to embarrass the vessels, the double-decked cattle barge 103 in tow on the starboard side of the tug Henry S. Beard, subsequently named the Agnes Moran, at a point about 25 feet forward of her stern, came into collision with the stern of the Coamo,

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

both vessels sustaining damage. Such a situation inclines one at the outset to the belief that there must have been fault in both the steamer and the tug.

The steamer was engaged in backing and filling, so as to round to on a port helm and head down stream against the tide. The tug W. F. Dalzell was at her port bow and the tug Ackerman at her starboard bow; it being the duty of the Dalzell to push ahead and of the Ackerman to pull astern when the steamer was moving ahead under her own steam, so as to help her round to. The purpose of the maneuver was to let the steamer drop back on the flood tide and go broadside into a basin between piers at the foot of South Third and South Fifth streets, Williamsburgh, where she was to lie alongside the bulkhead and discharge her cargo. The master of the tug Dalzell was on the bridge in charge of the navigation, and with him were the captain, third officer at the telegraph, and a quartermaster at the wheel. The first officer was at the bow, and the second officer was at the stern.

No one on the steamer seems to have seen the Beard coming up the river with her tow until the collision was imminent, except the captain of the Dalzell, who says he saw her when she was passing under the Brooklyn Bridge and the steamer had begun her turning movement. The master of the Beard says, when he was passing under the Brooklyn Bridge, he saw the steamer beginning this maneuver and he understood exactly what the purpose was. The distance between the vessels was at that time over a half a mile. The cattle barge was much longer and much higher than the Beard, so that her pilot was placed on top of the barge, in order to give the captain at the wheel directions as to the navigation on the starboard side, while the captain himself navigated for the port side.

[1] This situation was clearly one of special circumstances, under article 27 of the Inland Regulations (Comp. St. § 7901), which required each vessel to navigate with prudence so as to avoid immediate danger. The Servia, 149 U. S. 144, 13 Sup. Ct. 877, 37 L. Ed. 681; The John Englis, 176 Fed. 723, 100 C. C. A. 579; Transfer No. 19, 194 Fed. 77, 114 C. C. A. 155; The John Rugge, 234 Fed. 861, 148 C. C. A. 459; The Washington, 241 Fed. 952, 154 C. C. A. 588.

The steamer blew no signals and heard none from the Beard, though her witnesses say that when within 700 or 800 feet away she blew a signal of two blasts to indicate her intention to go under the steamer's stern, and afterwards an alarm. We are satisfied that these signals were not blown until the collision was imminent. The steamer, still making sternway, though her engines were going full speed ahead, struck the starboard side of the cattle float about 20 feet forward of her stern, so that it is evident that a little more care on the part of either or both vessels would have enabled them to pass clear.

The first suit was by the owner of the cattle barge against the steamer Coamo, whose claimant brought in under the Fifty-Ninth rule (29 Sup. Ct. xlvi) F. B. Dalzell & Co., Incorporated, and the tug Dalzell, whereupon F. B. Dalzell & Co., Incorporated, brought in the tug Beard under the same rule. The second suit was by the New York & Porto Rico Steamship Company, owner of the steamer Coamo,

against F. B. Dalzell & Co., Incorporated, and its tug Dalzell, who brought in the tug Beard under the Fifty-Ninth rule.

Both cases were tried together, and the oral opinion of the judge, delivered at the close of the case, indicates that his attention was centered upon the disputed question whether the navigation of the steamer was in charge of her master or of the captain of the tug Dalzell. On this point he found that it was in charge of the captain of the tug, and a decree was entered against F. B. Dalzell & Co., Incorporated, and the tug Dalzell.

[2] We think he was right in holding that the navigation was in charge of the captain of the Dalzell, but that there should have been no decree against the tug which was doing nothing at the time of the collision to contribute to it, as the steamer was then moving astern, and could have done nothing to prevent it. Although the navigation of the steamer was in charge of the captain of the tug her own officers and men were co-operating in the maneuver and were as much bound to the careful discharge of their duties as if the master of the steamer himself had been in charge of the navigation. The owner in personam and the steamer in rem are liable for any of their faults which contributed to the collision.

Plainly a most insufficient lookout was maintained on the steamer. The second officer was especially negligent for not advising the bridge to go ahead on the engines when the vessels were in dangerous proximity, which he could have done either by voice or by using the telegraph which connected the poop deck with the bridge. He was in the best possible position to appreciate how near to each other the sterns of the cattle float and the steamer were. On the other hand, the Beard was at fault for a bad lookout and for keeping ahead at full speed on a course close to the steamer's stern. She did nothing to prevent the collision in the way of slowing, stopping, or giving timely danger signals.

The court below is directed to enter a decree in favor of the cattle float, with interest and costs, against F. B. Dalzell & Co., Incorporated, the steamer Coamo, and the tug Henry S. Beard, and in favor of the New York & Porto Rico Steamship Company, claimant of the steamer Coamo, for two-thirds of its damages and costs, with interest, against F. B. Dalzell & Co., Incorporated, and the tug Henry S. Beard.

Decree reversed.